No. 18-70007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHRISTOPHER ANDRÉ VIALVA,
*Movant/Appellant,*

v.

UNITED STATES OF AMERICA,
*Respondent/Appellee.*

On Appeal from the United States District Court for the Western District
of Texas, Waco Division
Criminal Case Number W-99-CR-070

Honorable Lee Yeakel
United States District Judge

APPELLANT'S BRIEF IN SUPPORT OF
MOTION FOR CERTIFICATE OF APPEALABILITY

Susan M. Otto
Oklahoma Bar Association #6818
Federal Public Defender
Michael Lieberman
Oklahoma Bar Association #32694
Assistant Federal Public Defender
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Telefacsimile: 405 609-5932
Electronic Mail: Susan_Otto@fd.org
Michael_Lieberman@fd.org

Jared Tyler
Texas Bar Association #24042073
Tyler Law Firm LLC
P.O. Box 764
Houston, Texas 77001
Telephone: 713 861-4004
Electronic mail: jptyler@tylerlawfirm.org

Counsel for Movant/Appellant

THIS IS A CAPITAL CASE

# TABLE OF CONTENTS

Table of Authorities ........................................................................... ii

Statement of Issue ...............................................................................1

Statement of the Case..........................................................................1

Legal Standard ....................................................................................5

Summary of Argument.........................................................................8

Argument.............................................................................................9

    A COA Should Issue and Full Merits Briefing Should Proceed
    Because Reasonable Jurists Could Debate the District Court's
    Misconstruction and Dismissal of Christopher Vialva's Rule 60(b)
    Motion. .........................................................................................9

Conclusion .........................................................................................15

Certificate of Service .........................................................................16

Certificate of Compliance ..................................................................17

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Barefoot v. Estelle*,
　　463 U.S. 880 (1983)............................................................................5

*Buck v. Davis*,
　　___ U.S. ___, 137 S.Ct. 759 (2017) ...............................................12

*Gonzalez v. Crosby*,
　　545 U.S. 524 (2005)..........................................................................13

*Miller-El v. Cockrell*,
　　537 U.S. 322 (2003).........................................................................5, 6

*Rippo v. Baker*,
　　137 S.Ct. 905 (2017)..........................................................................12

*Slack v. McDaniel*,
　　529 U.S. 473 (2003).........................................................................5, 6

*Welch v. United States*,
　　__ U.S. __, 136 S.Ct. 1257 (2016) ...................................................6

*Withrow v. Larkin*,
　　421 U.S. 35 (1975)............................................................................12

## FEDERAL CASES

*Avila v. Quarterman*,
　　560 F.3d 299 (5th Cir. 2009) .........................................................6, 7

*Balentine v. Thaler*,
　　626 F.3d 842 (5th Cir. 2010) ..............................................................9

*Hernandez v. Johnson*,
 213 F.3d 243 (5th Cir. 2000) ..........................................................................7

*In re Coleman*,
 768 F.3d 367 (5th Cir. 2014) ........................................................................13

*Thornburg v. Mullin*,
 422 F.3d 1113 (10th Cir. 2005) ......................................................................6

*United States v. Bernard*,
 299 F.3d 467 (5th Cir. 2002), *cert. denied*,
 539 U.S. 928 (June 16, 2003) .........................................................................1

*United States v. Bernard*,
 762 F.3d 467 (5th Cir. 2014) ..........................................................................4

*United States v. Hernandes*,
 708 F.3d 680 (5th Cir. 2013) ....................................................................13, 14

*United States v. Rich*,
 151 F.3d 550 (5th Cir. 1998) ........................................................................14

*United States v. Rivas-Lopez*,
 678 F.3d 353 (5th Cir. 2012) ..........................................................................6

## FEDERAL STATUTES

28 U.S.C. §2253(c)(1) ........................................................................................6

28 U.S.C. §2253(c)(2) ........................................................................................5

28 U.S.C. §2255 ......................................................................................1, 7, 13

## RULES

Fed. R. Civ. Proc. 60(b) ........................................................................8, 9, 13, 14

## STATEMENT OF ISSUE

Christopher Vialva submits reasonable jurists would debate the merits of the following issue presented in this capital case:

Whether the district court legally erred by construing Christopher Vialva's Rule 60(b) Motion as an unauthorized second or successive Section 2255 Motion.

## STATEMENT OF THE CASE

Following a jury trial in the United States District Court for the Western District of Texas, Christopher Vialva was sentenced to life imprisonment on one count and to death on three counts. ROA.854-856. The convictions and sentences were affirmed on direct appeal. *United States v. Bernard*, 299 F.3d 467, 498 (5th Cir. 2002), *cert. denied*, 539 U.S. 928 (June 16, 2003).

On June 14, 2004, Mr. Vialva invoked Title 28, United States Code, Section 2255, by filing a post-conviction motion seeking review and vacatur of his convictions and sentences [hereinafter, 2255 Motion]. ROA.959-1172; ROA.1173-1566; ROA.1567-1965; ROA.1966-2076. The 2255 Motion alleged, *inter alia*, that Mr. Vialva had been deprived of effective assistance of counsel because counsel failed to conduct adequate factual and legal investigations in advance of and related to the sentencing phase of trial and that his counsel had a conflict of interest that affected his representation due to his active pursuit of employment during the representation as an Assistant United States Attorney. It also alleged that the district

judge presiding over the trial, Judge Walter Smith, had failed to follow statutory and Judicial Conference policy regarding the selection and appointment of learned counsel to Mr. Vialva at trial. Notwithstanding the allegations against Judge Smith, he continued to preside over the 2255 Motion.

Mr. Vialva supported his claims with proffers of evidence in the form of documents, affidavits, declarations, and investigative reports.  ROA.1173-1566; ROA.1567-1965; ROA.1966-2076.  Recognizing additional evidence was necessary to distinguish between ineffective assistance of counsel and prosecutorial misconduct and to elicit responses to specific fact issues from prior defense counsel, Mr. Vialva sought permission to conduct discovery.  ROA.2168-2186; ROA.2194-2201; ROA.2211-2217.  Specifically, Mr. Vialva sought, *inter alia*, to depose "learned counsel" Dwight Goains related to his conflict and ineffective-assistance claim.  The deposition was requested because Goains, then an Assistant United States Attorney, had "declined counsel's request to execute an affidavit or declaration concerning specific aspects of his representation of Mr. Vialva." ROA.2175.  Additionally, because Goains had failed to preserve Mr. Vialva's file, "[t]he unavailability of accurate, contemporaneous business records makes Mr. Goains the sole source of information about specific matters related to his representation of Mr. Vialva.  A deposition of Mr. Goains is the only reliable method

of collecting relevant evidence in a legally cognizable format for this Court's consideration." ROA.2176.

The United States filed a response that denied Mr. Vialva's factual allegations, and, with respect to his ineffectiveness claims, counter-alleged that Mr. Vialva's trial counsel made various "strategic" decisions to which deference was required. ROA.2363; ROA.2421. It did not proffer any evidence, nor did it ever move for summary judgment. ROA.2225-2254 (response to 2255 Motion); ROA.2606-2612 (response to motion to add Ground 12). Mr. Vialva filed a reply in which he pointed out that trial counsel's alleged omissions "came from inattention, inexperience, and incompetence," and were not strategic decisions. ROA.2529.

No further proceedings occurred in the district court. On September 12, 2012, *after seven years in which nothing occurred*, Judge Smith summarily denied Mr. Vialva's 2255 Motion and all ancillary motions and denied a COA. ROA.2620-2682. On the issue of Judge Smith's failure to follow statutory and Judicial Conference policy regarding the selection and appointment of learned counsel, the court admitted its failure to follow the rules, but concluded that Mr. Vialva's allegations regarding how Goains's conflict affected his performance were "insufficient . . . as they do not indicate a failure of counsel to contest the Government's case, but rather strategic decisions based upon limited funds and the experience of counsel." ROA.2634-2635. With respect Mr. Vialva's ineffectiveness

3

claims, Judge Smith held that counsel's failures in various regards were "strategic." ROA.2647.    Judge Smith further held that because the allegation implicated "strategy and tactics," the allegation "cannot form the basis for an ineffective assistance of counsel claim."  ROA.2647.  But as the court did not hold a hearing, these fact-findings made against Mr. Vialva without having afforded him any opportunity to be heard on them or to present evidence contravene the Rules of Civil Procedure and violate due process. "It is axiomatic . . . that for purposes of [a judgment on the pleadings], all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 at 230 (3d ed. 2017). In short, no allegation of fact can be construed or found against a party against whom a judgment on the pleadings is rendered. The findings were therefore arbitrary and violated fundamental due process.

On August 11, 2014, this Court denied Mr. Vialva permission to appeal, but described Mr. Vialva's claims as "meritless" based solely on briefing addressing whether a COA should issue. *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014).

At the time of Mr. Vialva's trial and throughout the post-conviction process, the district court was suffering from an addiction that impaired his judgment, his ability to control his behavior, and his ability to acknowledge the extent of his

4

impairments.   These facts became public record after Mr. Vialva was denied permission to appeal.   ROA.3495-3507.   These facts were the extraordinary circumstances supporting Mr. Vialva's Rule 60(b) Motion.

On October 13, 2017, Mr. Vialva filed his Rule 60(b) Motion.  ROA.2819. The motion urged that the proceeding should be reopened because Mr. Vialva had been denied meaningful post-conviction review—in violation of due process—by an impaired judge.  Due to the resignation of Judge Smith, the Motion was submitted to United States District Judge Yeakel.  The district court construed the motion as a successive 2255 motion and dismissed it for want of jurisdiction. A COA was not issued.  ROA.3510-3515.  A timely Notice of Appeal was filed.  ROA.3517.

## LEGAL STANDARD

A COA must be granted if the applicant makes "a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C.  §2253(c)(2).  This standard is satisfied when the applicant demonstrates "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Id.* at 484, quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983).

The appellate court "should limit its examination to a threshold inquiry into the underlying merit" of the claim.  *Miller-El*, 537 U.S. at 327, citing *Slack v.*

*McDaniel,* 529 U.S. 473, 481 (2000). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342. Accordingly, the appellate court "should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* at 337; and see *Welch v. United States*, __ U.S. __, 136 S.Ct. 1257, 1264 (2016) (the "narrow question" of whether a COA was denied erroneously "implicates a broader legal issue" of retroactivity; "If so, then on the present record reasonable jurists could at least debate whether Welch should obtain relief in his collateral challenge to his sentence.").

"Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338; *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009) (same). If even one Judge determines a claim is debatable, a COA should issue on that claim. See 28 U.S.C. §2253(c)(1) (COA must be issued by "*a* circuit . . . judge") (emphasis added); *Thornburg v. Mullin*, 422 F.3d 1113, 1118 (10th Cir. 2005) (noting district court "and a member of this court" granted COAs in §2254 capital cases). A COA should issue on procedural issues if reasonable jurists could debate both the underlying merits of the claim and the correctness of the district court's ruling. *Slack*, 529 U.S. at 484; and see *United States v. Rivas–Lopez*, 678 F.3d 353, 356 (5th Cir. 2012) (district court denied

hearing on ineffective assistance of counsel claim, COA issued on procedural ruling). "'Because the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor.'" *Avila*, 560 F.3d at 304, quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

Although obvious from the record, it is necessary to note this case involves the review of death sentences imposed in a federal prosecution. This means review is confined to a direct appeal from the conviction and sentence and a post-conviction proceeding that, by statute, must be initiated in the same court, before the same United States District Judge who presided over the trial. See 28 U.S.C. §2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground the sentence was imposed in violation of the Constitution . . . *may move the court which imposed the sentence* to vacate, set aside or correct the sentence.") (emphasis added).

The death-sentenced defendant in federal court is afforded only one mechanism for review, before the same decision maker who presided over the trial. There are no ancillary processes provided by statute for developing extra-record facts, for presenting evidence at a hearing, or for independent review through an appellate process distinct from the direct review. Application of this statute means the same district judge who presided over the allegedly constitutionally deficient trial determines the course of the post-conviction proceeding. The constitutional

sufficiency of this process depends entirely on whether the accused has received the full and fair hearing of his claims required by fundamental due process.

## SUMMARY OF ARGUMENT

Post-conviction review in capital prosecutions is an essential safeguard to protect constitutional rights and to ensure integrity of the process. The Supreme Court has expressly recognized the efficacy of Federal Rule of Civil Procedure 60(b)(6) that permits reopening a final judgment based on considerations that include the risk of injustice to the parties and the risk of undermining the public's confidence in the process.

Mr. Vialva was required by statute to file his post-conviction motion before the same United States District Judge who presided over his trial. The record presented by Mr. Vialva reflected multiple critical errors that, if resolved in his favor, may have required post-conviction relief. Several of these errors were causally connected to decisions by Judge Smith that were contrary to clearly established law and controlling procedure. Judge Smith did not recuse, but denied relief without allowing discovery to develop the record with respect to the allegations made, without conducting an evidentiary hearing on disputed facts, and without any countervailing evidence from the United States refuting significant structural errors in the trial. The district court then insulated its ruling from meaningful appellate review by denying a COA.

Mr. Vialva's Rule 60(b) Motion was predicated on subsequent events that revealed the district court judge was suffering from serious impairments during both the trial and post-conviction stages of this case. These impairments affected both the judge's behavior and capacity to acknowledge the severity of the impairment. These facts, coupled with the nature of the errors committed in this case, undermine confidence in the integrity and fidelity of the post-conviction process. Mr. Vialva has been denied a legitimate opportunity for post-conviction review by a neutral jurist. The Supreme Court has recognized Rule 60(b) is an appropriate mechanism for relief from an unjust result in a post-conviction case.

## ARGUMENT

**A COA SHOULD ISSUE AND FULL MERITS BRIEFING SHOULD PROCEED BECAUSE REASONABLE JURISTS COULD DEBATE THE DISTRICT COURT'S MISCONSTRUCTION AND DISMISSAL OF CHRISTOPHER VIALVA'S RULE 60(B) MOTION.**

The District Court correctly identified that "a non-merits-based defect in the district court's earlier decision on the federal habeas petition" falls within the jurisdiction of the district court to consider. ROA.3512 (citing *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)). Reasonable jurists could debate whether the district court correctly applied that legal principle to Mr. Vialva's motion for relief from the judgment.

Mr. Vialva's Rule 60(b) Motion sought reopening because the *process* employed by the district judge in the course of adjudicating his Section 2255 Motion, in conjunction with that judge's impairments, was a defect in the integrity of the proceeding that denied him meaningful review of the merits of his claims. ROA.2820. He supported this assertion by detailing his efforts to present meritorious issues that entitled him to relief pursuant to Section 2255, but which were summarily denied in contravention of basic due process that would have permitted necessary development of the record. In short, whatever merits the district court resolved, they were tainted by the unreliable process and decision maker and are not the merits of his claims.

In his motion to reopen the judgment, Mr. Vialva directed the district court's attention to the procedural history of his case that demonstrated multiple, systemic errors, some of which were attributable directly to the district judge. He also directed the district court's attention to the district judge's impairments that existed while presiding over the 2255 Motion, and that the impaired judge failed to recuse himself notwithstanding that the 2255 Motion alleged errors attributable to the judge. ROA.2821-2824.

The judge adjudicated facts against Mr. Vialva—some involving his own conduct and oversight—in the course of granting a judgment on the pleadings, *i.e.*, without permitting further discovery or holding an evidentiary hearing. ROA.2821-

2824. No meaningful review of those claims occurred. Mr. Vialva's 2255 Motion raised substantial claims that deserved careful review. The 2255 Motion alleged, for example, that the district court at trial ignored statutory and Judicial Conference guidance regarding the appointment of "learned counsel" by failing to consult with the federal public defender. As a result, Judge Smith appointed an attorney who (1) would not have been recommended; and (2) was actively seeking employment with the same United States Attorney's office that was prosecuting his client.

The conflicted "learned counsel" proceeded through the trial without presenting any effective first stage defense and completely abrogated responsibility for the second stage effort to save his client's life. Shortly after the trial concluded, "learned counsel" was hired as an Assistant United States Attorney. The attorney held that position until Mr. Vialva's case was pending on post-conviction and then he was appointed as a United States Magistrate Judge by Judge Smith, the same judge who presided over Mr. Vialva's trial and, in the context of Mr. Vialva's 2255 Motion, was tasked with ascertaining the effectiveness of this lawyer.

Instead of holding a hearing, the trial court made the factual determination (without evidence) that "learned counsel's" errors and omissions were all "strategic" in nature and thus Mr. Vialva could not possibly prove that his representation had been affected by any conflict. Equally inexplicable was the district court judge's continued exercise of jurisdiction when several allegations were linked to its

exercise of judicial discretion. An explanation may be found in light of subsequent events revealing the judge's impairments. That the district court's ability to exercise sound judgment, to recognize its errors, and to take the steps necessary to secure Mr. Vialva's fundamental due process rights is a defect in the integrity of the proceeding that prevented meaningful review from occurring.

Mr. Vialva maintained that any doubt regarding either the intent of Congress or the Constitutional necessity of "one fair shot at habeas review" for a capital petitioner's claims was resolved by *Buck v. Davis*, ___ U.S. ___, 137 S.Ct. 759, 767 (2017). ROA.2821. Any doubt that Mr. Vialva was denied his "one fair shot" was resolved by the evidence of the trial judge's impairments at the time of trial and throughout the pendency of the post-conviction process. ROA.2836-2837. The extent and severity of these impairments is a matter of public record, as is the difficulty the trial judge demonstrated in admitting his impairments. These critical facts, which should undermine confidence in both the post-conviction and trial stages of this capital case, merited only a footnote reference by the district court when it denied Mr. Vialva's Rule 60(b) Motion. ROA.3511. The District Court never acknowledged the denial of due process that results when "'the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S.Ct. 905, 906 (2017), quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

The district court relied on *In re Coleman*, 768 F.3d 367 (5th Cir. 2014), for the proposition that procedural defects in this context are narrowly construed and "generally do not include an attack based on the movant's own conduct, or his habeas counsel's omissions, which do not go to the integrity of the proceedings." *Id*. at 371-72. Be that as it may, Mr. Vialva's Rule 60(b) Motion did not include an attack based on his conduct or his habeas counsel's omissions. It rested on the district court's impairments, failure to afford any meaningful review, and violations of due process occurring in the course of the adjudication of the post-conviction motion. That the district court purported to reach the merits of Mr. Vialva's claims—and that granting Rule 60(b) relief would permit the court to reach them anew now—does not mean that Mr. Vialva has not alleged a defect in the integrity of the proceeding such that the motion should be considered under Rule 60(b) rather than as a successive 2255 Motion.

The District Court's reliance on *United States v. Hernandes*, 708 F.3d 680 (5th Cir. 2013), as supporting its construction of "the very definition of a successive motion" exemplifies its displaced analysis. ROA.3513. This Court in *Hernandes* declined to adopt a "bright line" test to distinguish between a valid Rule 60(b) motion and an unauthorized second or successive Section 2255 motion, in part because the Supreme Court had not done so in *Gonzalez v. Crosby*, 545 U.S. 524 (2005). *Hernandes*, 708 F.3d at fn. 1. From the limited record recitation, it appears

13

the movant in *Hernandes* was simply reiterating a merits-based argument he had presented and lost in his noncapital Section 2255 motion. *Hernandes*, 708 F.3d at 681. There are no facts recited in the opinion indicating the movant identified a flaw in the initial post-conviction *process* that called its reliability into question, *i.e.,* a defect in the integrity of the proceeding. The same dearth of facts demonstrating a denial of due process distinguishes *United States v. Rich*, 141 F.3d 550 (5th Cir. 1998), cited by the district court. ROA.3513.

Unlike the movant in *Rich*, Mr. Vialva did not attempt to resurrect a *Brady* claim concerning evidence to which he was privy at trial by relying on Supreme Court authority issued while his appeal was pending. *Rich*, 151 F.3d at 551; fn. 3. Mr. Vialva has invoked the mechanism provided by the Federal Rules of Civil Procedure to restore the status quo ante, *i.e.*, meaningful access to the sole avenue of post-conviction review in this federal capital case, consistent with the Supreme Court's interpretation of that mechanism. He asked that the lower court reopen the judgment in order to make that review—a review he is statutorily and constitutionally guaranteed—meaningful, not to challenge any alleged error on the merits.

To be sure, upon reopening and meaningful review, the district court may well determine that his claims lack merit. But it is the meaningful review to which Mr. Vialva claims entitlement, not any particular outcome from the review. Mr. Vialva

does, of course, believe that he alleged substantial constitutional violations of his rights in his 2255 Motion, and that, if given a meaningful opportunity to be heard, he can prevail on them. It is that opportunity—and a reliable adjudication in a capital case—that he seeks.

## CONCLUSION

Reasonable jurists could debate the district court's conclusion that Mr. Vialva's Rule 60(b) Motion is a successive 2255 Motion and merits further review. The Court should accordingly certify an appeal and permit briefing on the merits of it.

Respectfully submitted,

*s/Jared Tyler*
JARED TYLER
Texas Bar Association #24042073
Tyler Law Firm, PLLC
P.O. Box 764
Houston, Texas 77001
Telephone: 713 861-4004
Electronic Mail: jptyler@tylerlawfirm.org.

SUSAN M. OTTO
Oklahoma Bar # 6818
Federal Public Defender
MICHAEL LIEBERMAN
Oklahoma Bar #32694
Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930

Electronic Mail: Susan_Otto@fd.org;
Michael_Lieberman@fd.org.

COUNSEL FOR PETITIONER/APPELLANT
CHRISTOPHER ANDRÉ VIALVA

## CERTIFICATE OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS

I certify that, on April 16, 2018, the foregoing brief in support was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Mr. Joseph H. Gay, Jr.
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5512
joseph.gay@usdoj.gov

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*s/Jared Tyler*
JARED TYLER

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> This brief contains 3,405 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> This brief has been prepared in a proportionally spaced Times New Roman typeface using WordPerfect X6 in text and footnotes.

*s/Jared Tyler*
JARED TYLER